IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

H.P.F.                              :
                                    :
        **Plaintiff,**              :
                                    :
        v.                          :        Case No. 5:24-cv-00209-CHW
                                    :
COMMISSIONER                        :
OF SOCIAL SECURITY,                 :        Social Security Appeal
                                    :
        **Defendant.**              :
_____    :

**ORDER**

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff H.P.F.'s application for disability benefits. The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, and as a result, any appeal from this judgment may be taken directly to the Eleventh Circuit Court of Appeals in the same manner as an appeal from any other judgment of the United States District Court. Because the ALJ's decision and record fail to reflect that the ALJ considered Plaintiff's mental health impairments when formulating the RFC, Plaintiff's case is **REMANDED**.

**BACKGROUND**

Plaintiff applied for Title II disability benefits on May 11, 2020, alleging disability beginning on February 5, 2020, due to diabetes type 2 with neuropathy and retinopathy, hypertension, hypothyroidism, generalized anxiety disorder, back problems, and rheumatoid arthritis. (Ex. 1A). Plaintiff's date last insured (DLI) was June 30, 2025. (R. 19). After Plaintiff's application was denied initially and on reconsideration at the state agency level of review (Exs. 1A-5A), Plaintiff requested further review before an administrative law judge (ALJ). The

1

reviewing ALJ held a telephonic hearing on September 22, 2023. (R. 45-69). The ALJ issued an unfavorable opinion on December 29, 2023. (R. 14-44). Plaintiff's request for review of that decision by the Appeals Council was denied on May 16, 2024. (R. 1-6). The case is now ripe for judicial review. *See* 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the evidence preponderates against it. When a challenge involves whether the correct legal standards were used, courts review *de novo* the legal principles upon which the decision was based. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## EVALUATION OF DISABILITY

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in

substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

## MEDICAL AND ADMINISTRATIVE RECORD

The challenges raised by Plaintiff primarily focus on whether the ALJ applied and analyzed Plaintiff's case under the correct legal standards. While the portions of the administrative record that are most germane to Plaintiff's arguments are summarized here, the Court has reviewed the entire medical treatment record.

*Plaintiff's Work History*

As part of the application process, Plaintiff disclosed only two positions where she worked in the fifteen years prior to her alleged onset date. (Exs. 1E, 4E, 22E). Plaintiff worked in a hospital as an office manager/clerk from January 1996 until February 2020 and as a secretary in April and May 2020. (R. 242, 264, 349). Plaintiff said she used technical knowledge, used machines, tools, and equipment, and had to write and complete reports as part of her job. (Exs. 1E, 22E). As an office manager, Plaintiff "answered the phone; talked with medical staff, patients, and patient family members; keyed data into computer; scanned documents; ordered office supplies; picked up supplies from warehouse; stocked supplies; coordinated mail drop off and pick up; scheduled patients for staff; verified MD licenses; troubleshot problems with computer software; and made copies." (R. 350) (cleaned up). She lifted and carried medical supplies from the warehouse to her

car and her car into her office about three to four times per week, including delivering supplies to staff in the field as needed. (R. 350-351). She performed a laundry list of clerical duties, handled payroll, and would be on call biweekly to set up oxygen machines and hospital beds. (R. 351). Plaintiff supervised at least one other person as part of her duties. (R. 350).

At the hearing in front of the ALJ, Plaintiff testified that she worked in a regional hospital as a part of the home health department from 1996 to 2020. (R. 51-53). She described herself as the office manager, which involved a myriad of duties. (*Id.*) For example, Plaintiff delivered, set up, broke down, and picked up home health equipment like hospital beds and oxygen pumps. (R. 52). Plaintiff also checked in on patients if a staff member was unable to tend to the patients. (R. 52-53). She stopped working in early 2020 due to lingering effects from a November 2018 heart surgery. (R. 51-52). In contrast, Plaintiff explained to a consultative examiner that she had been laid off and was taking another job that was eliminated due to COVID. (R. 620, 622).

Vocation Expert (VE) Larry Shedd also testified at the hearing. In terms of Plaintiff's past work, he indicated that Plaintiff held positions as a medical secretary, office manager, administrative clerk, and medical equipment repairer. (R. 63-64). Plaintiff did not object to this testimony. The VE noted that at a light or sedentary level the secretary, office manager, and clerk positions had transferable skills, which he identified as making judgments, decisions, and working with people. (R. 64-65). The VE then identified several jobs at the sedentary level that Plaintiff could perform based on those skills. (R. 65-66). The ALJ asked the VE about what level of absenteeism and time-off task would be customarily tolerated at the identified jobs but did not pose any other hypotheticals involving any physical or mental health limitations. (R. 66).

## DISABILITY EVALUATION IN PLAINTIFF'S CASE

Following the five-step sequential evaluation process, the reviewing ALJ made the following findings in this case. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 5, 2020, her alleged onset date. (R. 19). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: cardiovascular disease, including hypertension and tachycardia, diabetes, and obesity (*Id.*) The ALJ also found that Plaintiff suffered from multiple non-severe impairments, including depression and anxiety, which were non-severe because all the "Paragraph B" criteria reflected only mild limitations. (R. 19-25). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling the severity of one of the listed impairments. (R. 25). Therefore, the ALJ assessed Plaintiff's RFC and determined that Plaintiff could perform a full range of light work as defined by 20 C.F.R. § 404.1567(b) (R. 26), which explains that:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing,  or when it involves sitting most of the time with some pushing and pulling or arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work….

20 C.F.R § 404.1567(b).

Based on this RFC, the ALJ found at step four that Plaintiff was capable of performing her past relevant work as a medical secretary and office manager as generally performed. (R. 30-32). Pursuant to step five, the ALJ alternatively determined that there are jobs existing which Plaintiff can perform, including insurance clerk, space scheduler, and travel clerk. (R. 32-35). As a result,

the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act at any time from February 5, 2020, through the date of the decision. (R. 35).

## ANALYSIS

Plaintiff presents two legal challenges to the ALJ's decision. She first argues that the ALJ failed to sufficiently consider whether Plaintiff was capable of performing past relevant work. (Docs. 9, 13). She next suggests that the ALJ failed to incorporate or account for the mild limitations reflected in the ALJ's Psychiatric Review Technique (PRT) of the paragraph B criteria at step three when crafting Plaintiff's RFC. (*Id.*) A review of the decision and record shows that the ALJ failed to address or analyze Plaintiff's mental health impairments when developing the RFC. Therefore, the Court cannot determine that substantial evidence supports the decision, and Plaintiff's case must be remanded.

1.  Based upon the decision and record, it does not appear that the ALJ considered Plaintiff's mental health impairments and potential limitations when formulating the RFC.

Plaintiff argues that the ALJ did not adequately address Plaintiff's mental health limitations, despite finding that Plaintiff had mild limitations in each category of the PRT at step 3. (Doc. 9, p. 12-14). Plaintiff does not dispute the results of the ALJ's analysis at steps 2 and 3, but instead argues that the ALJ was required to expand or incorporate those findings at steps 4 and 5 to develop an RFC inclusive of Plaintiff's limitations. (Doc. 9, p. 12-14). The ALJ recognized, as do the parties, that the evaluation of the paragraph B criteria in steps two and three are "distinct from the more detailed inquiry as to a claimant's RFC at step four." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1325 (11th Cir. 2021) (citing *Winschel*, 631 F.3d at 1180). The Commissioner counters, however, that the decision as a whole shows that the ALJ used the correct legal standards and appropriately considered the record to formulate Plaintiff's RFC. (Doc. 12). The decision and record confirm that Plaintiff is correct to contend that the ALJ failed to conduct

the more detailed analysis required or to discuss Plaintiff's mental health impairments when formulating Plaintiff's RFC.

When an ALJ evaluates a claimant's mental health impairments at steps 2 and 3 of the disability analysis, the ALJ considers a claimant's abilities in four functional areas, also known as the paragraph B criteria. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019). These areas include the claimant's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; or (4) adapt or manage oneself. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(A)(2)(b). Because the ALJ found that Plaintiff had only mild limitations in each of these areas and that those limitations did not impact Plaintiff's ability to work, Plaintiff's anxiety and depression were considered to be non-severe impairments. (R. 20-24). At step four, the ALJ found that Plaintiff could perform a full range of light without any physical or mental accommodations or exceptions.

An RFC is an assessment based on all the relevant evidence of a claimant's ability to work despite her impairments, even if those impairments are not deemed severe. 20 C.F.R. § 404.1545(a)-(b). The ALJ has the responsibility to assess the RFC. 20 C.F.R. § 404.1546(c). In doing so, an ALJ is not required to include limitations in the RFC that he rejects as not supported by the record. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). The ALJ stated that he considered all of Plaintiff's symptoms and impairments in terms of the entire record and that the RFC reflects the supported limitations. (R. 26). It is not enough, however, for an ALJ to say that all Plaintiff's symptoms and medically determinable impairments were considered for the RFC to be supported by substantial evidence; the decision must demonstrate that he did. *Pupo v. Comm'r, Soc. Sec. Admin*, 17 F.4th 1054, 1064-1065 (11th Cir. 2021).

The ALJ's analysis at step four fails to demonstrate that the ALJ considered Plaintiff's mental health impairments and conducted the more detailed analysis required when formulating the RFC. While the ALJ offered a thorough and well-supported discussion at steps two and three of the decision, the RFC analysis is silent about Plaintiff's mental health impairments or limitations. The Commissioner argues that the thorough analysis at steps two and three is sufficient but also notes that "[g]enerally, some of [the steps two and three] discussion could have be included later in the ALJ's decisions…but the decision should be read as a whole" such that substantial evidence supports the decision. (Doc. 12, p. 9). In support of this argument, the Commissioner cites *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261 (11th Cir. 2024), for the premise that it would be a needless formality to make the ALJ repeat similar analyses in multiple portions of the decision. The Commissioner is correct that a reviewing court may read the decision and consider the record as a whole in many instances, but the Court cannot do that here in the context of Plaintiff's challenge, and *Raper* does not provide otherwise.

In *Raper*, one of the claimant's contentions was that the ALJ legally erred by not sufficiently articulating the weight assigned to a certain medical opinion. *Id*. at 1274-1275. While the ALJ did not assign a weight to the opinion, the ALJ's decision discounted the opinion as not being consistent with medical record following a detailed review of evidentiary record. *Id*. at 1275. The *Raper* court found that a specific statement about the medical opinion was not required in light of a clearly articulated decision that was based on the record as whole and where it was "hard to imagine how the ALJ could have been clearer." *Id*. at 1275-1276. That "clearly articulated" discussion came within the confines of the RFC analysis, however, and not from a separate and distinct step in the disability evaluation, a step which requires a more in-depth analysis than previous steps.

8

While there are many instances in which an ALJ's decision can and should be read as a whole, the Court cannot do so here. Absent additional clarity in the decision or the record, the Court cannot infer that the ALJ incorporated the analysis from step two into the more detailed analysis required to develop an RFC. In Plaintiff's case, the *only* connective thread between steps two and four is one sentence. After recognizing that an RFC assessment requires a more detailed analysis than steps two and three, the AJL stated "…the following [RFC] assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." (R. 25). In some instances this sentence coupled with other portions of the decision or record may demonstrate that an ALJ adequately considered a claimant's mental health limitations at step four. *See, e.g. Winschel*, 631 F.3d at 1180 (discussing what the decision and hypotheticals may need to be included to demonstrate that an ALJ accounted for all the claimants impairments). In this case, however, the ALJ failed to mention Plaintiff's mental health impairments or incorporate, even by reference, *any* of the paragraph B analysis at step four.

The decision in Plaintiff's case is more akin to *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245 (11th Cir. 2019), in which there was no indication outside the analysis at steps two and three that the ALJ considered or rejected the alleged mental health limitations when formulating the RFC. The *Schink* ALJ found that the claimant's mental health impairments caused only mild limitations of the paragraph B criteria, but those limitations were not addressed during the RFC analysis, which focused only on the claimant's physical impairments and limitations. *Id*. at 1268-1269. The same is true in Plaintiff's case, where the RFC portion of the decision discusses only Plaintiff's physical impairments, symptoms, and limitations. (R. 26-30). When the ALJ references Plaintiff's psychological records or consultative exams at step four, only the examiners' physical health observations are cited. *See, e.g.*, (R. 28) (contrasting the psychological consultative exams'

notes about Plaintiff's gait, balance, and pain behaviors against the remainder of the record). This is not enough to show Plaintiff's mental health limitations were considered at step four.

Although this portion of the decision is silent about Plaintiff's mental health impairments and limitations, substantial evidence could have supported the decision via other portions of the record. Had the ALJ posed hypotheticals or otherwise asked the VE about any potential limitations, this testimony could have demonstrated and allowed the Court to find from the record as a whole that the ALJ at least considered how any mental health limitations may affect Plaintiff's ability to work in context of the RFC. However, the ALJ posed no such hypotheticals in this case, instead choosing only to ask about time off-task or absenteeism. (R. 66). Additionally, the ALJ did not pursue further questioning about any mental health limitations even when the VE specifically referenced that mental health related skills – making judgments, decision making, and working with people – were the transferrable skills of her past work. (R. 65). Soliciting this additional testimony from the VE could have demonstrated that the ALJ at least considered the limitations but ultimately rejected them in terms of Plaintiff's RFC. *See, e.g. Winschel*, 631 F.3d at 1181.

In formulating an RFC, an ALJ is not required to include limitations in the RFC which he rejects as not supported by the record. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). In this case, however, because neither the record nor decision demonstrate that the ALJ considered or rejected any mental health limitations in terms of the resulting RFC, the Court cannot determine whether the RFC is supported by substantial evidence.

   2.   The Court does not need to consider Plaintiff's remaining challenge.

Plaintiff also argues that the ALJ failed to evaluate her past relevant work in a legally sufficient manner. (Doc. 9, p. 7-12). She argues her past work qualified as a composite job, which ALJ failed to recognize, and thus the ALJ was required to evaluate whether Plaintiff could return

to past work as actually performed. (*Id.*) Plaintiff also raised a claim of error as to the ALJ's decision at step five that Plaintiff has transferrable skills such that she can perform other jobs. (*Id.*) Because Plaintiff's ability to perform past relevant work or other jobs in the national economy as noted at steps four and five[1] necessarily involves consideration of Plaintiff's RFC, this enumeration of error need not be reached based upon the Court's findings above.

## CONCLUSION

Because the record and decision fail to demonstrate that the ALJ considered Plaintiff's mental health limitations when formulating Plaintiff's RFC, it is **ORDERED** that the Commissioner's decision be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

**SO ORDERED**, this 22nd day of August, 2025.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge

---

[1] The Commissioner does not defend the ALJ's step five analysis. Instead, the Commissioner argues that any potential error at step five is irrelevant because the ALJ could have ended the analysis at step four. (Doc. 12, p. 8-9).